```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF TEXAS

 3                         WACO DIVISION

 4   UNITED STATES OF AMERICA      *   January 10, 2008
                                   *
 5   VS.                           *   CRIMINAL ACTION NOS.
                                   *
 6   ROY OWENS                     *      W-07-CR-142
     YARIEL TICOY FIGUEROA (2)     *      W-07-CR-36
 7   KENNETH ERIC WATSON           *      W-07-CR-107
     ASHLEY LYNETTE GOMEZ          *      W-07-CR-148
 8   BENJAMIN LEE COPELAND         *      W-07-CR-167
     CLARENCE ALBERT DUPREE        *      W-07-CR-168
 9   MICHAEL ANTHONY MARTINEZ      *      W-07-CR-175

10    BEFORE THE HONORABLE WALTER S. SMITH, JR., JUDGE PRESIDING
                     REARRAIGNMENT PROCEEDINGS
11
     APPEARANCES:
12
     For the Government:          Shelly Strimple, Esq.
13                                Stephanie Smith-Burris, Esq.
                                  Assistant United States Attorneys
14                                PO Box 828
                                  Waco, Texas  76701
15
     For Defendant Owens:         Reed W. Prospere, Esq.
16                                8111 Preston Road, Suite 500
                                  Dallas, Texas  75225
17
     For Defendant Figueroa:      Michael Lee Brandes, Esq.
18                                PO Box 1964
                                  Temple, Texas  76503
19
     For Defendant Watson:        Phil A. Martinez, Esq.
20                                Norwest Bank Plaza
                                  1105 Wooded Acres Dr., Suite 630
21                                Waco, Texas  76710

22   For Defendant Gomez:         Jack F. Holmes, Esq.
                                  5100 Midway Drive, Ste. 200B
23                                Temple, Texas  76502

24   For Defendant Copeland:      Norman E. Lanford, Esq.
                                  PO Box 1136
25                                Cameron, Texas  76520
```

2

```
1    For Defendant Dupree:        Steven Kendall Striegler, Esq.
                                  PO Box 1683
2                                 Belton, Texas   76513

3    For Defendant Martinez:      Ronald H. Moody, Esq.
                                  204 North 6th Street
4                                 Waco, Texas   76701

5    Court Reporter:              Kristie M. Davis
                                  United States District Court
6                                 PO Box 20994
                                  Waco, Texas   76702-0994

7


8


9         Proceedings recorded by mechanical stenography, transcript

10   produced by computer-aided transcription.

11


12


13


14


15


16


17


18


19


20


21


22


23


24


25
```

1  (January 10, 2008, 1:11, defendants present.)

2      MS. WILLIS:  Arraignment and guilty plea in Criminal

3  Action No. W-07-CR-142 styled United States of America vs. Roy

4  Owens.

5      MS. BURRIS:  Stephanie Smith-Burris for the government,

6  Your Honor.

7      MS. WILLIS:  Rearraignment proceedings in Criminal Action

8  No. W-07-CR-36 styled United States of America vs. Defendant

9  No. 2, Yariel Ticoy Figueroa.

10      MS. BURRIS:  Stephanie Smith-Burris for the government,

11  Your Honor.

12      MR. BRANDES:  Michael Brandes for Mr. Figueroa, Your

13  Honor.

14      MS. WILLIS:  Criminal Action No. W-07-CR-107 styled United

15  States of America vs. Kenneth Eric Watson.

16      MS. STRIMPLE:  Shelly Strimple for the United States, Your

17  Honor.

18      MR. MARTINEZ:  Phil Martinez for Mr. Watson, Your Honor.

19      MS. WILLIS:  Criminal Action No. W-07-CR-148 styled United

20  States of America vs. Ashley Lynette Gomez.

21      MS. BURRIS:  Stephanie Smith-Burris for the government,

22  Your Honor.

23      MR. HOLMES:  Jack Holmes for Mrs. Gomez, Your Honor.

24      MS. WILLIS:  Criminal Action No. W-07-CR-167 styled United

25  States of America vs. Benjamin Lee Copeland.

1        MS. BURRIS:  Stephanie Smith-Burris for the government,

2   Your Honor.

3        MR. LANFORD:  Norman Lanford for the defendant, Your

4   Honor.

5        MS. WILLIS:  Criminal Action No. W-07-CR-168 styled United

6   States of America vs. Clarence Albert Dupree.

7        MS. STRIMPLE:  Shelly Strimple for the United States.

8        MR. STRIEGLER:  Steven Striegler for Mr. Dupree, Your

9   Honor.

10       MS. WILLIS:  Criminal Action No. W-07-CR-175 styled United

11  States of America vs. Michael Anthony Martinez.

12       MS. BURRIS:  Stephanie Smith-Burris for the government,

13  Your Honor.

14       MR. MOODY:  Ron Moody for the defendant, Your Honor.

15       THE COURT:  Cause No. W-07-CR-142 is styled USA vs. Roy

16  Owens.

17       Is that your proper name, sir?

18       MR. OWENS:  Yes, sir.

19       THE COURT:  How old are you, Mr. Owens?  How old are you?

20       MR. OWENS:  41.

21       THE COURT:  And what is your educational background?  How

22  far did you go in school?

23       MR. OWENS:  Graduated high school.

24       THE COURT:  Thank you.

25       W-07-CR-036, Defendant 2, is styled USA vs. Yariel Ticoy

1    Figueroa?

2         DEFENDANT FIGUEROA:  Yes, sir.

3         THE COURT:  How old are you, sir?

4         DEFENDANT FIGUEROA:  29, sir.

5         THE COURT:  And what is your educational background?

6         DEFENDANT FIGUEROA:  11th grade.

7         THE COURT:  Thank you.

8         W-07-CR-167 is styled USA vs. Benjamin Lee Copeland.

9         Is that your proper name, sir?

10        DEFENDANT COPELAND:  Yes, sir.

11        THE COURT:  How did you get over there, Mr. Copeland?

12        Mr. Watson?

13        DEFENDANT WATSON:  Yes, sir.

14        THE COURT:  W-07-CR-107, Defendant 1, is styled USA

15   vs. Kenneth Eric Watson.

16        Is that your proper name?

17        DEFENDANT WATSON:  Yes, sir.

18        THE COURT:  How old are you, sir?

19        DEFENDANT WATSON:  How old am I?

20        THE COURT:  Uh-huh.

21        DEFENDANT WATSON:  34.

22        THE COURT:  Thank you.

23        W-07-CR-148, Defendant 1, is styled USA vs. Ashley Lynette

24   Gomez.

25        Is that your proper name, ma'am?

1       DEFENDANT GOMEZ:  Yes, sir.

2       THE COURT:  How old are you, Ms. Gomez?

3       DEFENDANT GOMEZ:  23, sir.

4       THE COURT:  And your educational background?

5       DEFENDANT GOMEZ:  High school graduate.

6       THE COURT:  Thank you.

7       W-07-CR-167 is styled USA vs. Benjamin Lee Copeland.

8       That is your name?

9       DEFENDANT COPELAND:  Yes, sir.

10      THE COURT:  How old are you, Mr. Copeland?

11      DEFENDANT COPELAND:  27.

12      THE COURT:  And your educational background?

13      DEFENDANT COPELAND:  GED.

14      THE COURT:  Thank you.

15      W-07-CR-168 is styled USA vs. Clarence Albert Dupree.

16      Is it "Dupree" or "Dupree"?

17      DEFENDANT DUPREE:  "Dupree."

18      THE COURT:  How old are you, sir?

19      DEFENDANT DUPREE:  53.

20      THE COURT:  And your educational background?

21      DEFENDANT DUPREE:  One semester college.

22      THE COURT:  Thank you.

23      W-07-CR-175 is styled USA vs. Michael Anthony Martinez.

24      Is that your proper name, sir?

25      DEFENDANT MARTINEZ:  Yes, sir.

1      THE COURT:  How old are you, Mr. Martinez?

2      DEFENDANT MARTINEZ:  29.

3      THE COURT:  Do each of you understand that if you enter a

4  guilty plea, I'm going to ask you some questions about the

5  offense or offenses to which you're pleading guilty and that if

6  you answer those questions under oath in open court and in the

7  presence of your attorney, your answers could be used against

8  you in a prosecution for perjury or false statement if your

9  answers are not true?

10      Do you understand that, Mr. Owens?

11      MR. OWENS:  Yes, sir.

12      THE COURT:  Do you, Mr. Figueroa?

13      DEFENDANT FIGUEROA:  Yes, sir.

14      THE COURT:  Mr. Watson, do you?

15      DEFENDANT WATSON:  Yes, sir.

16      THE COURT:  Ms. Gomez, do you?

17      DEFENDANT GOMEZ:  Yes, sir.

18      THE COURT:  Mr. Copeland, do you?

19      DEFENDANT COPELAND:  Yes, sir.

20      THE COURT:  Mr. Dupree, do you?

21      DEFENDANT DUPREE:  Yes, sir.

22      THE COURT:  Mr. Martinez, do you?

23      DEFENDANT MARTINEZ:  Yes, sir.

24      (Defendants were sworn.)

25      THE COURT:  Do any of you attorneys have any concerns at

1   all regarding your client's competence to stand trial and enter

2   a plea this afternoon?  And by being competent, I of course

3   mean having both a factual and a rational understanding of

4   these proceedings.

5        Mr. Prospere, do you have any such concerns?

6        MR. PROSPERE:  No, sir.  My client is competent, Judge.

7        THE COURT:  Thank you.

8        Mr. Brandes, do you have any such concerns?

9        MR. BRANDES:  No, Your Honor.

10       THE COURT:  Mr. Martinez, do you?

11       MR. MARTINEZ:  No, Your Honor.

12       THE COURT:  Mr. Holmes, do you?

13       MR. HOLMES:  I do not, Your Honor.

14       THE COURT:  Mr. Lanford, do you?

15       MR. LANFORD:  No, sir, Your Honor.

16       THE COURT:  Mr. Striegler, do you?

17       MR. STRIEGLER:  No concerns, Your Honor.

18       THE COURT:  Mr. Martinez -- uh-oh.  You're not

19   Mr. Martinez.  You don't even look like Phil's brother.

20       Mr. Moody, do you have any such concerns?

21       MR. MOODY:  No, Your Honor.  I do not.

22       THE COURT:  Do any of you defendants suffer from any

23   mental or physical impairment which would have any effect on

24   your ability to fully understand the charges against you or the

25   basis and consequences of a guilty plea?

```
1        Mr. Owens, do you?

2        MR. OWENS:  No, sir.

3        THE COURT:  Mr. Figueroa?

4        DEFENDANT FIGUEROA:  No, sir.

5        THE COURT:  Mr. Watson?

6        DEFENDANT WATSON:  No, sir.

7        THE COURT:  Ms. Gomez?

8        DEFENDANT GOMEZ:  No, sir.

9        THE COURT:  Mr. Copeland?

10       DEFENDANT COPELAND:  No, sir.

11       THE COURT:  Mr. Dupree?

12       DEFENDANT DUPREE:  No, sir.

13       THE COURT:  Mr. Martinez?

14       DEFENDANT MARTINEZ:  No, sir.

15       THE COURT:  Has any one of you ever suffered a physical

16  injury such as a head or a brain injury that might affect your

17  memory or your judgment in any way?

18       Mr. Owens?

19       MR. OWENS:  No, sir.

20       THE COURT:  Mr. Figueroa?

21       DEFENDANT FIGUEROA:  No, sir.

22       THE COURT:  Mr. Watson?

23       DEFENDANT WATSON:  No, sir.

24       THE COURT:  Ms. Gomez?

25       DEFENDANT GOMEZ:  No, sir.
```

1        THE COURT:  Mr. Copeland?

2        DEFENDANT COPELAND:  No, sir.

3        THE COURT:  Mr. Dupree?

4        DEFENDANT DUPREE:  No, sir.

5        THE COURT:  Mr. Martinez?

6        DEFENDANT MARTINEZ:  No, sir.

7        THE COURT:  Is any one of you under the influence of any

8    medicine or drugs this afternoon that might have such an effect

9    on you?

10        Mr. Owens?

11        MR. OWENS:  No, sir.

12        THE COURT:  Mr. Figueroa?

13        DEFENDANT FIGUEROA:  No, sir.

14        THE COURT:  Mr. Watson?

15        DEFENDANT WATSON:  No, sir.

16        THE COURT:  Ms. Gomez?

17        DEFENDANT GOMEZ:  No, sir.

18        THE COURT:  Mr. Copeland?

19        DEFENDANT COPELAND:  No, sir.

20        THE COURT:  Mr. Dupree?

21        DEFENDANT DUPREE:  No, sir.

22        THE COURT:  Mr. Martinez?

23        DEFENDANT MARTINEZ:  No, sir.

24        THE COURT:  Has each of you received a copy of the

25    document the government has filed which names you and states

1    the charges against you?  That could either be an indictment or

2    a superseding information or perhaps just an information.  In

3    any event, whichever type of document it is, have you received

4    a copy of it, have you read it or had it read to you, discussed

5    it with your attorney and do you understand what you're charged

6    with?

7         Mr. Owens?

8         MR. OWENS:  Yes, sir.

9         THE COURT:  Mr. Figueroa?

10        DEFENDANT FIGUEROA:  Yes, sir.

11        THE COURT:  Mr. Watson?

12        DEFENDANT WATSON:  Yes, sir.

13        THE COURT:  Ms. Gomez?

14        DEFENDANT GOMEZ:  Yes, sir.

15        THE COURT:  Mr. Copeland?

16        DEFENDANT COPELAND:  Yes, sir.

17        THE COURT:  Mr. Dupree?

18        DEFENDANT DUPREE:  Yes, sir.

19        THE COURT:  Mr. Martinez?

20        DEFENDANT MARTINEZ:  Yes, sir.

21        THE COURT:  Has each of you discussed with your attorney

22   not only what you're charged with but also any defenses that

23   you might be able to raise if you elected to go to trial?

24        Have you done that, Mr. Owens?

25        MR. OWENS:  Yes, sir.

1          THE COURT:  Have you, Mr. Figueroa?

2          DEFENDANT FIGUEROA:  Yes, sir.

3          THE COURT:  Mr. Watson?

4          DEFENDANT WATSON:  Yes, sir.

5          THE COURT:  Ms. Gomez?

6          DEFENDANT GOMEZ:  Yes, sir.

7          THE COURT:  Mr. Copeland?

8          DEFENDANT COPELAND:  Yes, sir.

9          THE COURT:  Mr. Dupree?

10         DEFENDANT DUPREE:  Yes, sir.

11         THE COURT:  Mr. Martinez?

12         DEFENDANT MARTINEZ:  Yes, sir.

13         THE COURT:  Mr. Owens, you are charged in a one-count

14    information with the offense of misprision of a felony, a

15    violation of Title 18 United States Code Section 4.   The

16    maximum punishment that can be assessed to a person convicted

17    of that offense is three years of incarceration followed by one

18    year of supervised release, a fine of up to a quarter of a

19    million dollars and a $100 special assessment under the Victims

20    of Crime Act.  Do you understand those possible maximum

21    punishments?

22         MR. OWENS:  Yes, sir.

23         THE COURT:  Has there been a plea agreement in this case?

24         MS. BURRIS:  There has been, Your Honor.  This defendant

25    has agreed to enter a plea of guilty to the information on file

1   against him.  The United States Attorney agrees to refrain from

2   prosecuting this defendant for any other Title 18 or Title 21

3   United States Code violations of which the United States is now

4   aware.  The United States agrees to inform the Court of the

5   cooperation, if any, of the defendant.  The defendant

6   understands that he is waiving his right to appeal as set out

7   in the written plea agreement.  And the written plea agreement

8   on file, which does include the factual basis, is the entire

9   agreement between the defendant, his counsel and the United

10  States.

11       THE COURT:  Is that an accurate summary of the plea

12  agreement, Mr. Prospere?

13       MR. PROSPERE:  Yes, sir.

14       THE COURT:  Mr. Owens, do you understand the plea

15  agreement and approve of it?

16       MR. OWENS:  Yes, sir.

17       THE COURT:  Do you also understand that you have the right

18  to plead not guilty to this charge or to continue in that plea

19  if you've previously entered such a plea?

20       MR. OWENS:  Yes, sir.

21       THE COURT:  With that understanding then to the charge of

22  misprision of a felony as alleged in the information in this

23  case, how do you wish to plead, guilty or not guilty?

24       MR. OWENS:  Guilty.

25       THE COURT:  Would you read the charge, please, Ms. Burris?

1        MS. BURRIS:  Yes, Your Honor.

2        The United States Attorney charges:  On or about March the

3    4th, 2004 in the Northern District of Texas the defendant Roy

4    Owens, having knowledge of the actual commission of a felony

5    cognizable by a court of the United States, to wit:  Conspiracy

6    to launder money instruments, contrary to Title 18 United

7    States Code Section 1956(h), the defendant did not as soon as

8    possible make known the same to some judge or other persons in

9    civil or military authority under the United States and

10    willfully concealed said felony by allowing his warehouse

11    located at 8300 C.F. Hawn, Dallas, Texas to be used by other

12    persons to store and hide quantities of marijuana for

13    distribution, the sale of which generated proceeds in the form

14    of United States currency, in violation of Title 18 United

15    States Code Section 4.

16        THE COURT:  Is that what you did, Mr. Owens?

17        MR. OWENS:  Yes, sir.

18        THE COURT:  Is that what you're pleading guilty to?

19        MR. OWENS:  Yes, sir.

20        THE COURT:  The factual basis, Ms. Burris?

21        MS. BURRIS:  Specifically the United States Attorney would

22    prove beyond a reasonable doubt that beginning at least as

23    early as 1998 and continuing until early 2005 Jose Ipina, Jr.

24    was acquiring large quantities of marijuana for distribution.

25    The marijuana was imported from Mexico and transported to Waco,

1   Texas which is located in the Western District of Texas,

2   Dallas, Texas and elsewhere.  Once the marijuana was sold, bulk

3   currency was collected from the sale of the fronted marijuana.

4   It was packaged for shipment back to Mexico to further the

5   ongoing illegal activity.  In early 2004 members of the

6   organization paid currency generated from the sale of marijuana

7   to Roy Owens for the use of his warehouse.  The organization

8   brought in truckloads of marijuana ranging from 6,000 to 11,000

9   pounds.  The marijuana was stored in the warehouse to hide the

10  illegal controlled substance distribution activity.  The

11  marijuana was offloaded in the warehouse to transport vans and

12  the marijuana was then sold for $325 a pound and generated

13  millions of dollars in drug revenue.  Roy Owens was aware of

14  the activity, did willfully conceal the activity and did not as

15  soon as possible notify persons in authority regarding the

16  activity.

17       And that is a summary of the factual basis on file, Your

18  Honor.

19       THE COURT:  Mr. Owens, do you have any disagreement with

20  that factual summary?

21       MR. OWENS:  No, sir.

22       THE COURT:  Mr. Figueroa, you are charged in -- is it

23  Count Three, Ms. Burris?

24       MS. BURRIS:  Mr. Figueroa?  I've got him in his separate

25  indictment, Your Honor.  Just a one-count indictment.

1      THE COURT:  Then, Mr. Figueroa, you are charged with

2   possession of counterfeit obligations, in violation of Title 18

3   United States Code Section 472 and aiding and abetting in that

4   offense, in violation of Title 18 United States Code Section 2.

5   The maximum punishment that can be assessed to a person

6   convicted of that offense is 20 years of incarceration followed

7   by five years of supervised release, a fine of up to a quarter

8   of a million dollars and a $100 special assessment under the

9   Victims of Crime Act.  Do you understand those possible maximum

10  punishments?

11      DEFENDANT FIGUEROA:  Yes, sir.

12      THE COURT:  Has there been a plea agreement in this case?

13      MS. BURRIS:  No, Your Honor.

14      THE COURT:  Do you understand, Mr. Figueroa, that you have

15  the right to plead not guilty to this charge or to continue in

16  that plea if you've previously entered a plea of not guilty?

17      DEFENDANT FIGUEROA:  Yes, sir.

18      THE COURT:  With that understanding then to the charge of

19  possessing counterfeit obligations and aiding and abetting in

20  that offense as alleged in the indictment, how do you wish to

21  plead, guilty or not guilty?

22      DEFENDANT FIGUEROA:  Guilty, sir.

23      THE COURT:  Would you read the charge in this case,

24  please, Ms. Burris?

25      MS. BURRIS:  Yes, Your Honor.

1      The grand jury charges:  On or about July 27th, 2006 in

2  the Western District of Texas the defendant Yariel Ticoy

3  Figueroa, aided and abetted by another, with the intent to

4  defraud, did possess a falsely made, forged and counterfeited

5  obligation of the United States, that is, a Federal Reserve

6  Note in the denomination of $20, series of 2000, with a serial

7  number of AG62422033A which he then knew to be falsely made,

8  forged and counterfeited, in violation of Title 18 United

9  States Code Section 472 and Title 18 United States Code Section

10  2.

11      THE COURT:  Is that what you did, Mr. Figueroa?

12      DEFENDANT FIGUEROA:  Yes, sir.

13      THE COURT:  And is that what you're pleading guilty to?

14      DEFENDANT FIGUEROA:  Yes, sir.

15      THE COURT:  The factual basis in this case, Ms. Burris?

16      MS. BURRIS:  Yes, Your Honor.

17      The United States would prove beyond a reasonable doubt

18  that on July 27th, 2006 officers with the Killeen Police

19  Department responded to an incident where an individual was

20  attempting to purchase groceries using a counterfeit $20

21  Federal Reserve Note from the 7-11 convenience store located at

22  611 North 10th Street, Killeen, Bell County, Texas which is

23  located in the Waco Division of the Western District of Texas.

24  The clerk at the convenience store determined that the currency

25  was counterfeit and alerted police officers who were in the

1    parking lot of the store.

2        The officers stopped the subject and investigated the

3    clerk's claim that the currency was counterfeit.  They

4    identified this subject as Yariel Ticoy Figueroa.  The officers

5    were able to confirm that the $20 bill that Figueroa passed was

6    counterfeit.  Mr. Figueroa consented to a search of his person

7    and the officers discovered another additional 12 counterfeit

8    $20 Federal Reserve Notes.

9        At the time of the incident Figueroa gave a sworn false

10   statement to police officers that he did not know the currency

11   was counterfeit and had been paid in cash for contract labor

12   work.

13       On September the 6th of 2006 Special Agent Todd Brown and

14   Steve Baskerville with the United States Secret Service

15   interviewed Figueroa.  After being advised of his Miranda

16   rights, Figueroa stated that he unknowingly received the

17   counterfeit currency from a subject he identified as Marques

18   Bell as payment for contract labor.  Figueroa told the agents

19   that Bell received the counterfeit currency from a female he

20   knew only as Isa.  Figueroa stated that Isa travels from

21   Florida and passes counterfeit that comes in from Ecuador.

22       On September the 8th of 2006 the agents again interviewed

23   Figueroa and again after being Mirandized he admitted that he

24   knowingly passed and possessed counterfeit money and that he

25   received the counterfeit 20s from codefendant Marques Bell with

1    the intention of knowingly passing the counterfeit currency.

2         On October the 11th of 2006 Special Agent Brown

3    interviewed Marques Bell at the Bell County jail.  After being

4    Mirandized, Bell confessed to the agent that he had received an

5    unspecified amount of counterfeit currency from Isa and then

6    passed the money to Capone whose AKA was Yariel Ticoy Figueroa.

7    Bell further confessed that he knew the money he received from

8    Isa was counterfeit because she told him it was.

9         Yariel Figueroa obtained counterfeit currency from Marques

10   Bell and with intent to defraud Figueroa passed some of that

11   counterfeit money, including the counterfeit $20 Federal

12   Reserve Note alleged in the indictment.

13        The defendant Figueroa admits that he committed the

14   offense alleged in the indictment along with the codefendant

15   Marques Bell.

16        That's a summary of the factual basis on file, Your Honor.

17        THE COURT:  Do you have any disagreement with that factual

18   summary, Mr. Figueroa?

19        DEFENDANT FIGUEROA:  No, sir.

20        THE COURT:  Mr. Watson, you are charged in four counts of

21   an indictment.  Count One charges you with conspiracy to

22   possess with intent to distribute at least five kilograms of a

23   mixture or substance containing a detectable amount of cocaine,

24   in violation of Title 21 United States Code Sections 841(a)(1),

25   841(b)(1)(A)(ii) and Section 846.  There's a mandatory minimum

20

1    sentence of ten years attached to that offense.  The possible

2    maximum sentence is life in prison.  Five years of supervised

3    release -- up to five years of supervised release would follow

4    any period of incarceration.  A fine of up to $4 million could

5    be assessed and there would be a $100 mandatory special

6    assessment under the Victims of Crime Act.

7        Count Two charges you with possession with intent to

8    distribute at least 500 grams of a mixture or substance

9    containing a detectable amount of cocaine, in violation of

10   Title 21 United States Code Sections 841(a)(1) and

11   841(b)(1)(B)(ii)(II).  There's a mandatory minimum sentence of

12   ten years -- I mean of five years for anyone convicted of that

13   offense, a possible maximum sentence of 40 years.  Four years

14   of supervised release could be assessed.  $2 million in fines

15   could be imposed and there would also be a $100 special

16   assessment.

17       Count Three charges you with possession of a firearm in

18   furtherance of a drug trafficking crime, in violation of Title

19   18 United States Code Sections 924(c)(1)(A)(I).  The mandatory

20   punishment for that offense is five years of incarceration

21   which must be served consecutively to any other sentence, three

22   years of supervised release, a quarter of a million dollars in

23   fines and again a $100 special assessment.

24       Count Four charges you with possession of a firearm by a

25   convicted felon, in violation of Title 18 United States Code

1   Sections 922(g)(1) and 924(a)(2).  The maximum punishment that

2   can be assessed to a person convicted of that offense is ten

3   years of incarceration followed by three years of supervised

4   release, a fine of up to a quarter of a million dollars and

5   another $100 special assessment.

6       That means that the -- there would be a mandatory 20 year

7   sentence for a person convicted of all four of those counts.

8   The maximum possible sentence would be life in prison.  Five

9   years of supervised release could be assessed.  Six and a half

10  million dollars in fines could be imposed and there would be

11  $400 in mandatory special assessments.  Do you understand those

12  maximum possible punishments?

13      DEFENDANT WATSON:  Yes, sir.

14      MS. STRIMPLE:  Your Honor, if I may, as to Count One the

15  supervised release is at least five years and as to Count Two

16  it's at least four according to the statute.

17      THE COURT:  Do you understand those possible punishments,

18  Mr. Watson?

19      DEFENDANT WATSON:  Yes, sir.

20      THE COURT:  Has there been a plea agreement in this case,

21  Ms. Strimple?

22      MS. STRIMPLE:  No, Your Honor.  There has not.

23      THE COURT:  Do you understand, Mr. Watson, that you have

24  the right to plead not guilty to any or all of these charges or

25  to continue in such pleas if you've already entered guilty

1    pleas?

2         DEFENDANT WATSON:  Yes, sir.

3         THE COURT:  Not guilty pleas, rather.  Do you understand

4    that?

5         DEFENDANT WATSON:  Yes, sir.

6         THE COURT:  Then as to the charge in Count One, conspiracy

7    to possess with intent to distribute at least five kilograms of

8    a mixture or substance containing a detectable amount of

9    cocaine, how do you wish to plead, guilty or not guilty?

10        DEFENDANT WATSON:  Guilty, Your Honor.

11        THE COURT:  And as to the charge in Count Two of

12   possession with intent to distribute at least 500 grams of a

13   mixture or substance containing a detectable amount of cocaine,

14   how do you wish to plead, guilty or not guilty?

15        DEFENDANT WATSON:  Guilty, Your Honor.

16        THE COURT:  And as to the charge of possessing a firearm

17   in furtherance of a drug trafficking crime as alleged in Count

18   Three, how do you wish to plead, guilty or not guilty?

19        DEFENDANT WATSON:  Guilty, Your Honor.

20        THE COURT:  And as to the charge of possession of a

21   firearm by a convicted felon as alleged in Count Four, how do

22   you wish to plead, guilty or not guilty?

23        DEFENDANT WATSON:  Guilty, Your Honor.

24        THE COURT:  Would you read the charges, please,

25   Ms. Strimple?

1    MS. STRIMPLE:  Yes, Your Honor.

2    The grand jury charges, Count One:  Beginning in or about

3    February 2006, the exact date unknown, and continuing until on

4    or about July 13th, 2006 in the Western District of Texas

5    defendants Kenneth Eric Watson and Eric Smith III and others

6    both known and unknown to the grand jury did unlawfully and

7    willfully combine, conspire, confederate and agree together and

8    with each other and others to possess with intent to distribute

9    a controlled substance, which offense involved at least five

10   kilograms of a mixture or substance containing a detectable

11   amount of cocaine, a Schedule 2 narcotic drug controlled

12   substance, contrary to Title 21 United States Code Section

13   841(a)(1) and 841(b)(1)(A)(ii) and in violation of Title 21

14   United States Code Section 846.

15   Count Two:  On or about June 28th, 2006 in the Western

16   District of Texas defendant Kenneth Eric Watson unlawfully,

17   knowingly and intentionally did possess with intent to

18   distribute a controlled substance, which offense involved at

19   least 500 grams of a mixture or substance containing a

20   detectable amount of cocaine, a Schedule 2 narcotic drug

21   controlled substance, in violation of Title 21 United States

22   Code Sections 841(a)(1) and 841(b)(1)(B)(ii)(II).

23   Count Three:  On or about June 28, 2006 in the Western

24   District of Texas defendant Kenneth Eric Watson did knowingly

25   possess at least one of the following firearms, to wit:  A

1    Bushmaster .223 pistol bearing Serial Number 0598; a Hi Point

2    Model C-99 9-millimeter pistol bearing Serial Number P1263960

3    in furtherance of a drug trafficking crime for which he may be

4    prosecuted in a court of the United States, to wit:  Possession

5    with intent to distribute at least 500 grams of cocaine, a

6    Schedule 2 narcotic drug controlled substance, contrary to

7    Title 21 United States Code Sections 841(a)(1) and

8    841(b)(1)(B)(ii)(II), all in violation of Title 18 United

9    States Code Section 924(c)(1)(A)(1).

10        Count Four:  On or about June 28, 2006 in the Western

11   District of Texas defendant Kenneth Eric Watson, being a person

12   who had been convicted of the following crime punishable by

13   imprisonment for a term exceeding one year, to wit:  On

14   November 19, 1993 Kenneth Eric Watson was convicted of

15   possession with intent to distribute crack cocaine, a

16   Schedule 2 narcotic drug controlled substance, in the United

17   States District Court for the Western District of Texas, Austin

18   Division in Cause No. A-93-CR-132, did unlawfully and knowingly

19   possess at least one of the following firearms, to wit:  A

20   Bushmaster .223 pistol bearing Serial Number 0598; a Hi Point

21   Model C99 9-millimeter pistol bearing Serial Number P1263960

22   which had moved in commerce and affecting commerce, in

23   violation of Title 18 United States Code Sections 922(g)(1) and

24   924(a)(2).

25        THE COURT:  Are those the things you did, Mr. Watson?

1          DEFENDANT WATSON:  Yes, sir.

2          THE COURT:  And are those the things to which you're

3    pleading guilty?

4          DEFENDANT WATSON:  Yes, sir.

5          THE COURT:  The factual basis, Ms. Strimple?

6          MS. STRIMPLE:  On June 28, 2006 an officer with the Harker

7    Heights Police Department attempted a traffic stop of a Chevy

8    Avalanche truck with license plate 02PSS2.  The driver of the

9    vehicle refused to stop and a marked patrol unit pursued the

10   vehicle until the chase was terminated for safety reasons.

11   Shortly after the vehicle chase, Bell County 911 received a

12   call of a black male in the area attempting to stop passing

13   cars while waving a bag of marijuana.  The caller reported

14   seeing a truck that matched the description of the Avalanche

15   nearby.  A second caller reported seeing a vehicle similar to

16   the Avalanche involved in the chase speeding down a nearby

17   street with a blown-out tire.  The second caller advised the

18   truck went into a ditch on Old Nolanville Road and the driver

19   was a black male who was walking down the road carrying a bag.

20   A third caller advised she observed a black male in her yard.

21   Officers met with the third caller who directed the officers to

22   the church to the west of her property.  The third caller

23   advised the man had hid some bags at the base of a light pole

24   by the church.

25         Officers went to the church which is located in

1    Nolanville, Texas which is in the Waco Division of the Western

2    District of Texas.  Officers found several duffle bags at the

3    base of the light pole.  Inside the bags officers found

4    cocaine, marijuana, a letter addressed to Watson and the

5    Bushmaster and Hi Point firearms listed in Counts Three and

6    Four of the indictment.  The cocaine was inside a cloth bag

7    labeled "Red Monkey Jeans."  Nearby officers located the Chevy

8    Avalanche involved in the vehicle chase.  The vehicle was

9    registered to Watson at an address in Harker Heights, Texas.

10        A photograph of Watson was obtained and presented to the

11   911 caller who reported the black male attempting to stop

12   motorists with a bag of marijuana.  The caller identified

13   Watson as the man he was seeing -- he had seen.  A search

14   warrant for Watson's residence was obtained.  At the home

15   investigators located a currency counting machine, currency

16   wrappers, kilogram size packaging containing a white residue

17   which tested positive for the presence of cocaine, an

18   electronic scale and cloth bags marked "Red Monkey Jeans."  The

19   home was wired with a security system which recorded images

20   both inside and outside of the home.  Investigators reviewed

21   the recordings made by the system and observed Watson putting

22   firearms into a bag similar to one of the bags found at the

23   church and then entering the Chevy Avalanche previously

24   described.

25        The narcotics found at the church were submitted to the

1    Texas Department of Public Safety laboratory.  They were found

2    to be 984.74 grams of cocaine and almost two pounds of

3    marijuana.  The firearms listed in Counts Three and Four are

4    firearms which are manufactured outside of the State of Texas,

5    thus they have moved in or affected commerce.  These firearms

6    were possessed in furtherance of Watson's drug trafficking

7    activities.

8        Watson was previously convicted of the offense listed in

9    Count Four of the indictment which is an offense with a term of

10   imprisonment exceeding one year.

11       Further investigation revealed that a coconspirator had

12   rented a storage unit at Long Branch Storage located in the

13   Waco Division of the Western District of Texas.  A search

14   warrant was obtained for that location.  Inside officers

15   located paperwork belonging to Watson, digital scales, powder

16   cocaine, cocaine residue, a Bursa Thunder .380, a Browning 12

17   gauge shotgun and a Beretta 12 gauge shotgun.  The firearms

18   were possessed by both coconspirators in furtherance of their

19   drug trafficking activities.  The narcotics found were sent to

20   the Texas Department of Public Safety laboratory and were found

21   to be 938.92 grams of cocaine.

22       On July 14th of 2006 a search warrant was executed at a

23   coconspirator's residence.  The coconspirator was interviewed.

24   He indicated he rented the storage unit, that he had put the

25   firearms in the unit and that there was approximately a

1  kilogram of cocaine in the unit.

2      A cooperating witness was interviewed who stated Watson

3  was the head of a large scale cocaine trafficking organization.

4  The cooperator stated a team of five persons, which included

5  Smith, was responsible for distributing between one and three

6  kilos of powder cocaine a week in the Killeen area.  The

7  cooperator described other teams in the Austin and Houston

8  area.

9      A second cooperating witness was interviewed who said that

10 this person had received between four and nine ounces of powder

11 cocaine on a weekly basis from Watson beginning in March of

12 2006 until June of 2006.  This cooperator described an

13 organization involving more than five participants with Watson

14 as the head.

15     That is a summary of the factual basis pertaining to this

16 defendant, Your Honor.

17     THE COURT:  Do you have any disagreement with that factual

18 summary, Mr. Watson?

19     DEFENDANT WATSON:  No, sir.

20     THE COURT:  Ms. Gomez, you are charged in a one-count

21 indictment with possessing with intent to distribute cocaine, a

22 Schedule 2 controlled substance, in violation of Title 21

23 United States Code Sections 841(a)(1) and 841(b)(1)(C) and

24 aiding and abetting in that offense, in violation of Title 18

25 United States Code Section 2.  The maximum punishment that can

1    be assessed to a person convicted of that offense is 20 years

2    of incarceration followed by three years of supervised release,

3    a fine of up to a million dollars and a $100 special assessment

4    under the Victims of Crime Act.  Do you understand those

5    possible maximum punishments?

6          DEFENDANT GOMEZ:  Yes, sir.

7          THE COURT:  Has there been a plea agreement in this case,

8    Ms. Burris?

9          MS. BURRIS:  No, Your Honor.

10         THE COURT:  Do you understand, Ms. Gomez, that you have

11   the right to plead not guilty to this charge or to continue in

12   that plea if you've previously entered a plea of not guilty?

13         DEFENDANT GOMEZ:  Yes, sir.

14         THE COURT:  With that understanding then to the charge of

15   possessing with intent to distribute cocaine as alleged in

16   count -- in the one-count indictment and aiding and abetting in

17   that offense, how do you wish to plead, guilty or not guilty?

18         DEFENDANT GOMEZ:  Guilty, sir.

19         THE COURT:  Would you read the charge, please, Ms. Burris?

20         MS. BURRIS:  Yes, Your Honor.

21         The grand jury charges:  On or about July 18, 2007 in the

22   Western District of Texas the defendant Ashley Lynette Gomez,

23   aided and abetted by another, did unlawfully, knowingly and

24   intentionally possess with the intent to distribute a mixture

25   or substance containing a detectable amount of cocaine, a

1   Schedule 2 narcotic drug controlled substance, in violation of

2   Title 21 United States Code Sections 841(a)(1) and 841(b)(1)(C)

3   and Title 18 United States Code Section 2.

4       THE COURT:  Is that what you did, Ms. Gomez?

5       DEFENDANT GOMEZ:  Yes, sir.

6       THE COURT:  And is that what you're pleading guilty to?

7       DEFENDANT GOMEZ:  Yes, sir.

8       THE COURT:  The factual basis in this case, Ms. Burris?

9       MS. BURRIS:  Yes, Your Honor.

10      On July 18th, 2007 Sergeant Bob Turner with the Texas

11  Department of Public Safety Narcotics Division was called to

12  assist Trooper Wilkins on a traffic stop which had occurred in

13  McLennan County located in the Waco Division of the Western

14  District of Texas.  Trooper Wilkins and Trooper Dale were

15  working speed enforcement on I-35 northbound.  Trooper Dale had

16  clocked the vehicle identified as a black 1997 BMW with a Texas

17  license plate at 84 miles per hour in a 65 mile per hour zone.

18      The trooper made contact on the passenger side of the

19  vehicle.  The driver who was later identified as Michael David

20  White stated he did not have a reason for the speed.  The

21  trooper noticed as White handed him his Texas driver's license

22  that his hand was trembling.  White told Trooper Wilkins that

23  he was coming home from Austin where he and his girlfriend who

24  was later identified Ashley Lynette Gomez had spent a couple of

25  days visiting.  The trooper did not see anything in the vehicle

1    that indicated an overnight stay.  Records check revealed that

2    White had a drug arrest history which further raised the

3    trooper's suspicions for the nervousness being exhibited.

4    White was asked if he was traveling with anything illegal and

5    began asking him specifically regarding weapons, stolen

6    property and narcotics.  White became increasingly nervous,

7    swinging his arms and repeating "no, no, no" before the trooper

8    could even finish his questions.  The trooper was then asked

9    for and received consent to search the vehicle.

10       Trooper Wilkins meanwhile made contact with the female

11   passenger Gomez.  He told her he would be searching the vehicle

12   and asked her if there was anything illegal in it.  Her

13   response was "not that I know of."  The trooper noticed there

14   were two purses in the front floorboard between Ms. Gomez'

15   feet.  She indicated the purses were hers.  The trooper asked

16   if there was anything illegal in them and again she indicated

17   she was not sure.

18       The trooper stuck his head inside the door and immediately

19   noticed an odor of burnt marijuana.  He also noticed pieces of

20   raw marijuana on the passenger side floorboard.  The trooper

21   picked up the two purses from the floorboard and immediately

22   saw what was a white powdery substance in the black purse.

23   There was also a package of cough drops that was opened and

24   contained two Ziploc baggies that held more white powdery

25   substance.  Also located inside that purse was an electric bill

1   with White's name and address on it.

2       After being Mirandized, White refused to make any

3   statements in reference to the cocaine and Gomez admitted that

4   it belonged to her.

5       The suspected cocaine was submitted to the DPS lab which

6   confirmed the presence of cocaine.  And in the training and

7   experience of Sergeant Bob Turner, the amount was for

8   distribution and not for personal use.

9       And that is a summary of the factual basis on file, Your

10  Honor.

11      THE COURT:  Do you have any disagreement with that factual

12  summary, Ms. Gomez?

13      DEFENDANT GOMEZ:  No, sir.

14      THE COURT:  Mr. Copeland, you are charged in a one-count

15  indictment with possessing with intent to distribute a mixture

16  or substance containing a detectable amount of methamphetamine

17  within 1,000 feet of a public school, which is a violation of

18  Title 21 United States Code Sections 841(a)(1), 841(b)(1)(C)

19  and 860(a).  There's a mandatory minimum sentence of at least

20  one year of incarceration, a possible maximum sentence of 40

21  years of incarceration, six years of supervised release to

22  follow any period of incarceration, a fine of up to $2 million

23  and a $100 special assessment under the Victims of Crime Act.

24  Do you understand those possible maximum punishments?

25      DEFENDANT COPELAND:  Yes, sir.

1          THE COURT:  Has there been a plea agreement in this case,

2   Ms. Burris?

3          MS. BURRIS:  No, Your Honor.

4          THE COURT:  Do you understand, Mr. Copeland, that you have

5   the right to plead not guilty to this charge or to continue in

6   that plea if you've previously entered a plea of not guilty?

7          DEFENDANT COPELAND:  No, sir.  Yes, sir.

8          THE COURT:  Do you want me to ask you again?  You have the

9   right to plead not guilty, Mr. Copeland, or if you've

10  previously entered a plea of not guilty at an arraignment by a

11  letter or in writing or otherwise, you have the right to

12  continue pleading not guilty.  Do you understand?

13         DEFENDANT COPELAND:  Yes, sir.

14         THE COURT:  With that understanding then to the charge of

15  possessing with intent to distribute a mixture or substance

16  containing a detectable amount of methamphetamine within 1,000

17  feet of a public school as alleged in the indictment, how do

18  you wish to plead, guilty or not guilty?

19         DEFENDANT COPELAND:  Guilty.

20         THE COURT:  Would you read the charge in this case,

21  please, Ms. Burris?

22         MS. BURRIS:  Yes, Your Honor.

23         The grand jury charges:  On or about October 14th, 2007 in

24  the Western District of Texas the defendant Benjamin Lee

25  Copeland unlawfully, knowingly and intentionally did possess

1    with the intent to distribute a controlled substance, which

2    offense involved a mixture or substance containing a detectable

3    amount of methamphetamine, a Schedule 2 controlled substance,

4    the said possession having occurred within 1,000 feet of the

5    real property comprising a public school, to wit:  Travis

6    Middle School located at 1500 South 19th Street, Temple, Bell

7    County, Texas, in violation of Title 21 United States Code

8    Sections 841(a)(1), 841(b)(1)(C) and 860(a).

9         THE COURT:  Is that what you did, Mr. Copeland?

10        DEFENDANT COPELAND:  Yes, sir.

11        THE COURT:  What was your answer?  Yes?

12        DEFENDANT COPELAND:  Yes.

13        THE COURT:  And is that what you're pleading guilty to?

14        DEFENDANT COPELAND:  Yes, sir.

15        THE COURT:  The factual basis, Ms. Burris?

16        MS. BURRIS:  Yes, Your Honor.

17        On October the 14th, 2007 a Temple Police Department

18   officer was dispatched to Scott & White Hospital, which is

19   located within the Waco Division of the Western District of

20   Texas, in regards to an assault with injury call.  Upon arrival

21   the officer met with the female who stated she had been beaten

22   up by her fiance Benjamin Lee Copeland.  At the time the female

23   was around 21 weeks pregnant.  The officer observed multiple

24   injuries on her which included bite injuries on her right arm,

25   right shoulder and face.  She also had large scrapes and

1   contusions on her back and a lump on her forehead.  The victim

2   also had injuries which she stated were from past beatings.

3   One of these was a bluish yellow contusion on her left collar

4   bone.  A doctor who was attending the victim stated that in his

5   medical opinion the victim had present injuries which were

6   about two weeks old.  While the officer was speaking with her,

7   a Scott & White employee informed the officer that Copeland

8   called asking about her and was probably on his way up to the

9   hospital to see how she was doing.  The officer finished

10  speaking with her and went out to the parking lot to see if

11  Copeland would show up.  He saw a green Honda matching the

12  description that had been given by the victim pull into the

13  emergency room parking lot.  The officer followed the vehicle

14  into the southwest parking lot at Scott & White and observed a

15  white male matching the description of Copeland given by the

16  victim getting out of the vehicle.  The officer asked the

17  individual if he was Benjamin and he stated yes.  The officer

18  placed him under arrest for assault with bodily injury, family

19  violence and put him in his car.  During a search of the

20  vehicle incident to arrest the officer found a plastic bag that

21  contained a green leafy substance in the center console, which

22  through the officer's training and experience he believed to be

23  marijuana.  He also located a plastic baggie containing a

24  crystal like substance and several small plastic baggies

25  containing more crystal like substance in the center console

1    which through the officer's training and experience he believed

2    to be methamphetamine.  The officer located a glass tube with a

3    glass ball at one end which was burnt.  The officer also

4    recognized this to be drug paraphernalia.  The crystal

5    substance later tested positive for the presence of

6    methamphetamine.

7         Scott & White Hospital is located within 1,000 feet of a

8    public school which is Travis Middle School which is located at

9    1500 South 19th Street in Temple, Bell County, Texas.

10        In the training and experience of Agent David Hess with

11   the Temple Police Department Special Investigations Unit, the

12   amount of methamphetamine possessed by this defendant was an

13   amount for distribution and not for personal use.

14        And that is a summary of the factual basis on file, Your

15   Honor.

16        THE COURT:  Do you have any disagreement with that factual

17   summary, Mr. Copeland?

18        DEFENDANT COPELAND:  No, sir.

19        THE COURT:  Mr. Dupree, you are charged in a one-count

20   indictment with possessing with intent to distribute five grams

21   of a substance containing crack cocaine, a Schedule 2

22   controlled substance, in violation of Title 21 United States

23   Code Sections 841(a)(1) and 841(b)(1)(B)(iii).  The maximum

24   punishment that can be assessed to a person convicted of that

25   offense is at least five years of incarceration, a possible

1   total period of incarceration of 40 years, a fine of up to $2

2   million, four years of supervised release and a $100 special

3   assessment under the Victims of Crime Act.  Do you understand

4   those possible maximum punishments?

5       DEFENDANT DUPREE:  Yes, sir.

6       THE COURT:  Has there been a plea agreement in this case,

7   Ms. Strimple?

8       MS. STRIMPLE:  No, Your Honor.

9       THE COURT:  Do you understand, Mr. Dupree, that you have

10  the right to plead not guilty to this charge or to continue in

11  that plea if you've previously entered a plea of not guilty?

12      DEFENDANT DUPREE:  Yes, sir.

13      THE COURT:  With that understanding then to the charge of

14  possessing with intent to distribute five grams or more of a

15  substance containing crack cocaine as alleged in the

16  indictment, how do you wish to plead, guilty or not guilty?

17      DEFENDANT DUPREE:  Guilty.

18      THE COURT:  Would you read the charge, please,

19  Ms. Strimple?

20      MS. STRIMPLE:  The grand jury charges:  On or about

21  October 23rd, 2007 in the Western District of Texas defendant

22  Clarence Albert Dupree did unlawfully, knowingly and

23  intentionally possess with intent to distribute a controlled

24  substance, which offense involved at least five grams of a

25  mixture or substance containing cocaine base, also known as

1    crack cocaine, a Schedule 2 narcotic drug controlled substance,

2    in violation of Title 21 United States Code Sections 841(a)(1)

3    and 841(b)(1)(B)(iii).

4         THE COURT:  Is that what you did, Mr. Dupree?

5         DEFENDANT DUPREE:  Yes, sir.

6         THE COURT:  And is that what you're pleading guilty to?

7         DEFENDANT DUPREE:  Yes, sir.

8         THE COURT:  The factual basis in this case, Ms. Strimple?

9         MS. STRIMPLE:  On October 23rd, 2007 members of the

10   Killeen Police Department executed a search warrant at a

11   residence on Blair Street in Killeen, Texas which is located in

12   the Western District of Texas.  The search warrant was based on

13   information from seven confidential informants which indicated

14   Dupree and others were acting together to distribute crack

15   cocaine from two residences located on Blair Street and West

16   Avenue E in Killeen, Texas.  Dupree was located inside the

17   Blair Street residence.  Inside a bedroom used by Dupree

18   investigators located cookies of crack cocaine and crack

19   cocaine broken into individual pieces.  The weight of the crack

20   cocaine was approximately 51.8 grams.  Smaller amounts of

21   powder cocaine, ecstasy and a box for digital scales were

22   located.  Some of the narcotics were packaged for resale.  A

23   cooperating witness was interviewed who stated the crack

24   cocaine belonged to Dupree.

25        A second search warrant was executed at a residence on

1    West Avenue E in Killeen, Texas.  This residence is leased in

2    Dupree's name.  Prior to the execution of the search warrant

3    investigators conducted surveillance.  Investigators observed

4    Dupree arrive at and leave the location.  Investigators also

5    observed activity consistent with drug trafficking.  An

6    occupant of the vehicle leaving the West Avenue E address was

7    stopped and questioned.  The occupant stated he had just

8    purchased crack cocaine from an unknown individual at the West

9    Avenue E residence.  The occupant identified Dupree as a person

10   who had sold him crack cocaine several times in the past at

11   that location.  Digital scales and cocaine residue were located

12   in the kitchen.  The weight of the crack cocaine, information

13   from informants and witnesses and the activity and items

14   located at the addresses indicate the crack cocaine was

15   possessed for distribution purposes, not for personal use.

16        That is the factual basis, Your Honor.

17        THE COURT:  Do you have any disagreement with that factual

18   summary, Mr. Dupree?

19        DEFENDANT DUPREE:  No, sir.

20        THE COURT:  Mr. Martinez, you are charged in a one-count

21   indictment with possessing with intent to distribute a mixture

22   or substance containing a detectable amount of methamphetamine,

23   a violation of Title 21 United States Code Sections 841(a)(1)

24   and 841(b)(1)(C).  The maximum punishment that can be assessed

25   to a person convicted of that offense is 20 years of

1    incarceration followed by three years of supervised release, a

2    fine of up to a million dollars and a $100 special assessment.

3    Do you understand those possible maximum punishments?

4         DEFENDANT MARTINEZ:  Yes, sir.

5         THE COURT:  Has there been a plea agreement in this case,

6    Ms. Burris?

7         MS. BURRIS:  No, Your Honor.

8         THE COURT:  Do you understand, Mr. Martinez, that you have

9    the right to plead not guilty to this charge or to continue in

10   that plea if you've previously entered a plea of not guilty?

11        DEFENDANT MARTINEZ:  Yes, Your Honor.

12        THE COURT:  With that understanding then to the charge of

13   possessing with intent to distribute a mixture or substance

14   containing a detectable amount of methamphetamine as alleged in

15   the indictment, how do you wish to plead, guilty or not guilty?

16        DEFENDANT MARTINEZ:  Guilty, sir.

17        THE COURT:  Would you read the charge, please, Ms. Burris?

18        MS. BURRIS:  Yes, Your Honor.

19        The grand jury charges:  On or about October 10th, 2007 in

20   the Western District of Texas the defendant Michael Anthony

21   Martinez unlawfully, knowingly and intentionally did possess

22   with the intent to distribute a controlled substance, which

23   offense involved a mixture or substance containing a detectable

24   amount of methamphetamine, a Schedule 2 controlled substance,

25   in violation of Title 21 United States Code Sections 841(a)(1)

1  and 841(b)(1)(C).

2       THE COURT:  Is that what you did, Mr. Martinez?

3       DEFENDANT MARTINEZ:  Yes, sir.

4       THE COURT:  Is that what you're pleading guilty to?

5       DEFENDANT MARTINEZ:  Yes, sir.

6       THE COURT:  The factual basis in this case, Ms. Burris?

7       MS. BURRIS:  On Wednesday, October 10th, 2007 officers

8  with the McLennan County Sheriff's Office and the DPS narcotics

9  unit executed a state narcotics search warrant at a residence

10 located in Waco, McLennan County which is located in the

11 Western District of Texas.  The residence was under the control

12 of Roddy Scott.  At the time the search warrant was executed, a

13 female was also in the residence.  The officers located a

14 quantity of methamphetamine, scales, pills and other items used

15 in the trafficking of controlled substances.  While speaking

16 with the residents, they agreed to place a phone call to their

17 supplier in an attempt to cooperate with law enforcement.

18      Ms. Hicks spoke with the individual later identified as

19 Michael Anthony Martinez and requested an ounce of

20 methamphetamine.  He indicated he didn't have that much on him

21 at the time but he had a quarter ounce and would bring it over

22 to the residence.  Approximately 15 minutes later Martinez

23 drove up to the residence, came up on the porch and knocked on

24 the door.  Law enforcement officers who were inside the

25 residence opened the door.  When Martinez saw them, he ran from

1    the residence.  Officers caught up with him and apprehended him

2    approximately a half a block later.  When they did catch him,

3    Martinez struggled with the officers for a time before he was

4    subdued.  He advised Investigator Mike Gates with the Sheriff's

5    Office that the stuff was in his pocket.  The officers searched

6    him and found methamphetamine in his pockets which had been

7    divided into two packages.  The substance was later tested and

8    did test positive for the presence of methamphetamine.

9        Based on the training and experience of Investigator Roger

10   Kucera, the amount of methamphetamine found was an amount for

11   distribution and not for personal use.

12       That's a summary of the factual basis, Your Honor.

13       THE COURT:  Do you have any disagreement with that factual

14   summary, Mr. Martinez?

15       DEFENDANT MARTINEZ:  No, sir.

16       THE COURT:  I mention to each of you that a part of the

17   punishment that could be imposed would include a period of

18   supervised release.  That means that when a person is

19   incarcerated as a result of a felony in federal court, once

20   they are released from incarceration, they're required to live

21   under the supervision of the probation department for a period

22   of time.  That's very much like being on probation in that you

23   have to live up to certain terms and conditions, such as not

24   violating the law or using controlled substances.  You have to

25   maintain employment and report regularly.  It's also like being

1    on probation in that if you do violate a term or condition of

2    your supervised release, it can be revoked and you can be

3    sentenced to a second period of incarceration that could be as

4    long as the entire period of supervised release, and you would

5    get no credit for whatever period of time you had already

6    served on supervised release.

7         Do you understand that, Mr. Owens?

8         MR. OWENS:  Yes, sir.

9         THE COURT:  Do you, Mr. Figueroa?

10        DEFENDANT FIGUEROA:  Yes, sir.

11        THE COURT:  Mr. Watson, do you?

12        DEFENDANT WATSON:  Yes, sir.

13        THE COURT:  Ms. Gomez, do you?

14        DEFENDANT GOMEZ:  Yes, sir.

15        THE COURT:  Mr. Copeland, do you?

16        DEFENDANT COPELAND:  Yes, sir.

17        THE COURT:  Mr. Dupree, do you?

18        DEFENDANT DUPREE:  Yes, sir.

19        THE COURT:  Mr. Martinez, do you?

20        DEFENDANT MARTINEZ:  Yes, sir.

21        THE COURT:  Mr. Owens, I need to advise you that as a part

22   of your plea agreement you've waived your right to an appeal.

23   If your plea agreement is accepted by the Court, that becomes a

24   permanent condition and you can't later change your mind and

25   decide that you would like to appeal your sentence or file some

1    other type of application for post conviction relief.  Do you

2    understand that?

3         MR. OWENS:  Yes, sir.

4         THE COURT:  I also need to advise you that the offense to

5    which you're pleading guilty is classified as a felony under

6    federal law.  That means that you have the right to have the

7    matter presented to a federal grand jury for the return of an

8    indictment before proceeding to enter a guilty plea or go to

9    trial.  That is a right that you may waive, and if you do, then

10   you can proceed on the information that's been filed.  I have

11   here before me a written waiver of indictment signed by you and

12   your attorney.  So I assume that's what you wish to do; is that

13   correct?

14        MR. OWENS:  Yes, sir.

15        THE COURT:  Before accepting your guilty pleas, then,

16   there are a number of rights I need to advise you of and a

17   number of questions I need to ask you.  If you don't understand

18   any of these things, feel free to consult with your attorney at

19   any time.

20        First of all, has each of you had an ample opportunity to

21   discuss your case with your attorney and are you satisfied with

22   his representation of you?

23        Mr. Owens?

24        MR. OWENS:  Yes, sir.

25        THE COURT:  Mr. Figueroa?

1        DEFENDANT FIGUEROA:  Yes, sir.

2        THE COURT:  Mr. Watson?

3        DEFENDANT WATSON:  Yes, sir.

4        THE COURT:  Ms. Gomez?

5        DEFENDANT GOMEZ:  Yes, sir.

6        THE COURT:  Mr. Copeland?

7        DEFENDANT COPELAND:  Yes, sir.

8        THE COURT:  Mr. Dupree?

9        DEFENDANT DUPREE:  Yes, sir.

10       THE COURT:  Mr. Martinez?

11       DEFENDANT MARTINEZ:  Yes, sir.

12       THE COURT:  Do each of you understand that under the

13  constitution and the laws of the United States you're entitled

14  to a trial by jury on the charges you face?

15       Do you understand that, Mr. Owens?

16       MR. OWENS:  Yes, sir.

17       THE COURT:  Do you, Mr. Figueroa?

18       DEFENDANT FIGUEROA:  Yes, sir.

19       THE COURT:  Mr. Watson, do you?

20       DEFENDANT WATSON:  Yes, sir.

21       THE COURT:  Ms. Gomez, do you?

22       DEFENDANT GOMEZ:  Yes, sir.

23       THE COURT:  Mr. Copeland, do you?

24       DEFENDANT COPELAND:  Yes, sir.

25       THE COURT:  Mr. Dupree, do you?

1          DEFENDANT DUPREE:  Yes, sir.

2          THE COURT:  Mr. Martinez, do you?

3          DEFENDANT MARTINEZ:  Yes, sir.

4          THE COURT:  At a trial and at every stage of the

5    proceedings against you, you have the right to be represented

6    by an attorney.  If you can't afford to pay an attorney to

7    represent you through a trial, then one would be appointed to

8    represent you at no cost to you.

9          During a trial, you would be presumed to be innocent.  The

10   government would have the obligation of proving your guilt

11   beyond a reasonable doubt, using competent evidence, before you

12   could be found guilty, and you would never have to prove that

13   you're innocent.

14         Also during a trial the witnesses for the government would

15   have to come into court and testify in your presence.  Your

16   attorney would have the right to cross-examine the government's

17   witnesses, to object to their evidence and to offer evidence on

18   your behalf.  You would have the right to testify yourself if

19   you wished, but you couldn't be forced to.  If you elected not

20   to testify, the fact that you did not couldn't be used against

21   you as any suggestion or inference of your guilt.

22         Do you understand those rights that you have, Mr. Owens?

23         MR. OWENS:  Yes, sir.

24         THE COURT:  Do you, Mr. Figueroa?

25         DEFENDANT FIGUEROA:  Yes, sir.

1          THE COURT:  Mr. Watson?

2          DEFENDANT WATSON:  Yes, sir.

3          THE COURT:  Ms. Gomez?

4          DEFENDANT GOMEZ:  Yes, sir.

5          THE COURT:  Mr. Copeland?

6          DEFENDANT COPELAND:  Yes, sir.

7          THE COURT:  Mr. Dupree?

8          DEFENDANT DUPREE:  Yes, sir.

9          THE COURT:  Mr. Martinez?

10          DEFENDANT MARTINEZ:  Yes, sir.

11          THE COURT:  If you continue in your guilty plea and I

12   accept your guilty plea, then you will waive your right to a

13   trial and all those other rights I just discussed.  There will

14   be no further trial, and I will enter a judgment of guilty and

15   sentence you on the basis of your guilty plea, after

16   considering a presentence report.

17          Do you understand that, Mr. Owens?

18          MR. OWENS:  Yes, sir.

19          THE COURT:  Do you, Mr. Figueroa?

20          DEFENDANT FIGUEROA:  Yes, sir.

21          THE COURT:  Mr. Watson, do you?

22          DEFENDANT WATSON:  Yes, sir.

23          THE COURT:  Ms. Gomez, do you?

24          DEFENDANT GOMEZ:  Yes, sir.

25          THE COURT:  Mr. Copeland, do you?

1      DEFENDANT COPELAND:  Yes, sir.

2      THE COURT:  Mr. Dupree, do you?

3      DEFENDANT DUPREE:  Yes, sir.

4      THE COURT:  Mr. Martinez, do you?

5      DEFENDANT MARTINEZ:  Yes, sir.

6      THE COURT:  Having discussed your rights with you, do you

7  still want to plead guilty?

8      Mr. Owens?

9      MR. OWENS:  Yes, sir.

10      THE COURT:  Mr. Figueroa?

11      DEFENDANT FIGUEROA:  Yes, sir.

12      THE COURT:  Mr. Watson?

13      DEFENDANT WATSON:  Yes, sir.

14      THE COURT:  Ms. Gomez?

15      DEFENDANT GOMEZ:  Yes, sir.

16      THE COURT:  Mr. Copeland?

17      DEFENDANT COPELAND:  Yes, sir.

18      THE COURT:  Mr. Dupree?

19      DEFENDANT DUPREE:  Yes, sir.

20      THE COURT:  Mr. Martinez?

21      DEFENDANT MARTINEZ:  Yes, sir.

22      THE COURT:  Are you pleading guilty because you are guilty

23  and for no other reason?

24      Mr. Owens?

25      MR. OWENS:  Yes, sir.

```
1          THE COURT:  Mr. Figueroa?

2          DEFENDANT FIGUEROA:  Yes, sir.

3          THE COURT:  Mr. Watson?

4          DEFENDANT WATSON:  Yes, sir.

5          THE COURT:  Ms. Gomez?

6          DEFENDANT GOMEZ:  Yes, sir.

7          THE COURT:  Mr. Copeland?

8          DEFENDANT COPELAND:  Yes, sir.

9          THE COURT:  Mr. Dupree?

10         DEFENDANT DUPREE:  Yes, sir.

11         THE COURT:  Mr. Martinez?

12         DEFENDANT MARTINEZ:  Yes, sir.

13         THE COURT:  Are you pleading guilty freely and

14    voluntarily?

15         Mr. Owens?

16         MR. OWENS:  Yes, sir.

17         THE COURT:  Mr. Figueroa?

18         DEFENDANT FIGUEROA:  Yes, sir.

19         THE COURT:  Mr. Watson?

20         DEFENDANT WATSON:  Yes, sir.

21         THE COURT:  Ms. Gomez?

22         DEFENDANT GOMEZ:  Yes, sir.

23         THE COURT:  Mr. Copeland?

24         DEFENDANT COPELAND:  Yes, sir.

25         THE COURT:  Mr. Dupree?
```

1        DEFENDANT DUPREE:  Yes, sir.

2        THE COURT:  Mr. Martinez?

3        DEFENDANT MARTINEZ:  Yes, sir.

4        THE COURT:  Has anyone threatened you, coerced you or

5   forced you in any way into pleading guilty?

6        Mr. Owens?

7        MR. OWENS:  No, sir.

8        THE COURT:  Mr. Figueroa?

9        DEFENDANT FIGUEROA:  No, sir.

10        THE COURT:  Mr. Watson?

11        DEFENDANT WATSON:  No, sir.

12        THE COURT:  Ms. Gomez?

13        DEFENDANT GOMEZ:  No, sir.

14        THE COURT:  Mr. Copeland?

15        DEFENDANT COPELAND:  No, sir.

16        THE COURT:  Mr. Dupree?

17        DEFENDANT DUPREE:  No, sir.

18        THE COURT:  Mr. Martinez?

19        DEFENDANT MARTINEZ:  No, sir.

20        THE COURT:  Punishment in these cases will be determined

21   in this manner:  Your case will be referred to the probation

22   office to prepare a presentence report.  The most important

23   part of that report is the officer's recommendation as to the

24   appropriate guideline range for sentencing.  That's based on a

25   formula that takes into account the offense or offenses to

1  which you're pleading guilty.  It also takes into account any

2  criminal history that you might have.  The results of the

3  formula are then expressed in a range of months.  As an example

4  of a range of months that I'm certainly not suggesting would

5  apply in any one of these cases, a range of months in a

6  particular case might be 24 to 30 months.  That would mean that

7  I would be advised that the appropriate sentence in that case

8  was 24 months of incarceration or 30 months of incarceration or

9  any number of months between 24 and 30, but I would not be

10  bound by that.  I would have the right to sentence that person

11  to less than 24 months if I thought that was appropriate or to

12  more than 30 months if I thought that was appropriate.  If I

13  elected to sentence that person to more than 30 months,

14  however, he or she would have the right to appeal the sentence

15  based on the fact that my reasons for doing that were not

16  reasonable.

17        Do you understand how that method of determining

18  punishment works, Mr. Owens?

19        MR. OWENS:  Yes, sir.

20        THE COURT:  Do you, Mr. Figueroa?

21        DEFENDANT FIGUEROA:  Yes, sir.

22        THE COURT:  Mr. Watson, do you?

23        DEFENDANT WATSON:  Yes, sir.

24        THE COURT:  Ms. Gomez, do you?

25        DEFENDANT GOMEZ:  Yes, sir.

1        THE COURT:  Mr. Copeland, do you?

2        DEFENDANT COPELAND:  Yes, sir.

3        THE COURT:  Mr. Dupree, do you?

4        DEFENDANT DUPREE:  Yes, sir.

5        THE COURT:  Mr. Martinez, do you?

6        DEFENDANT MARTINEZ:  Yes, sir.

7        THE COURT:  Mr. Watson, Mr. Copeland and Mr. Dupree, you

8   are each facing a mandatory minimum sentence of various

9   amounts.  Do you understand that regardless of what the

10  sentencing guidelines might suggest to the Court, I would be

11  mandated to sentence you to at least that mandatory minimum

12  sentence except in rather any -- very exceptional

13  circumstances?

14       Do you understand that, Mr. Watson?

15       DEFENDANT WATSON:  Yes, sir.

16       THE COURT:  Do you understand that, Mr. Copeland?

17       DEFENDANT COPELAND:  Yes, sir.

18       THE COURT:  Has each of you discussed with your attorney

19  how the sentencing guidelines might affect your case?

20       Have you done that, Mr. Owens?

21       MR. OWENS:  Yes, sir.

22       THE COURT:  Have you, Mr. Figueroa?

23       DEFENDANT FIGUEROA:  Yes, sir.

24       THE COURT:  Mr. Watson, have you?

25       DEFENDANT WATSON:  Yes, sir.

1          THE COURT:  Ms. Gomez, have you?

2          DEFENDANT GOMEZ:  Yes, sir.

3          THE COURT:  Mr. Copeland, have you?

4          DEFENDANT COPELAND:  Yes, sir.

5          THE COURT:  Mr. Dupree, have you?

6          DEFENDANT DUPREE:  Yes, sir.

7          THE COURT:  Mr. Martinez, have you?

8          DEFENDANT MARTINEZ:  Yes, sir.

9          THE COURT:  Other than those discussions you've had with

10  your attorney about the probable effect of the sentencing

11  guidelines, has anyone made any prediction, prophecy or promise

12  to you as to what your sentence will actually be?

13          Mr. Owens?

14          MR. OWENS:  No, sir.

15          THE COURT:  Mr. Figueroa?

16          DEFENDANT FIGUEROA:  No, sir.

17          THE COURT:  Mr. Watson?

18          DEFENDANT WATSON:  No, sir.

19          THE COURT:  Ms. Gomez?

20          DEFENDANT GOMEZ:  No, sir.

21          THE COURT:  Mr. Copeland?

22          DEFENDANT COPELAND:  No, sir.

23          THE COURT:  Mr. Dupree?

24          DEFENDANT DUPREE:  No, sir.

25          THE COURT:  Mr. Martinez?

1          DEFENDANT MARTINEZ:  No, sir.

2          THE COURT:  And except for the promises the government has

3    made in its plea agreement with you, Mr. Owens, has anyone made

4    any promise to any one of you that has caused you to plead

5    guilty?

6          Mr. Owens?

7          MR. OWENS:  No, sir.

8          THE COURT:  Mr. Figueroa?

9          DEFENDANT FIGUEROA:  Excuse me, sir.  Can you repeat that

10   again?

11         THE COURT:  Sure.  Has anyone made any promise to you that

12   has caused you to plead guilty, Mr. Figueroa?

13         DEFENDANT FIGUEROA:  No, sir.

14         THE COURT:  How about you, Mr. Watson?

15         DEFENDANT WATSON:  No, sir.

16         THE COURT:  Ms. Gomez?

17         DEFENDANT GOMEZ:  No, sir.

18         THE COURT:  Mr. Copeland?

19         DEFENDANT COPELAND:  No, sir.

20         THE COURT:  Mr. Dupree?

21         DEFENDANT DUPREE:  No, sir.

22         THE COURT:  Mr. Martinez?

23         DEFENDANT MARTINEZ:  No, sir.

24         THE COURT:  Would any one of you like to withdraw your

25   guilty plea at this point?

1          Mr. Owens?

2          MR. OWENS:  No, sir.

3          THE COURT:  Mr. Figueroa?

4          DEFENDANT FIGUEROA:  No, sir.

5          THE COURT:  Mr. Watson?

6          DEFENDANT WATSON:  No, sir.

7          THE COURT:  Ms. Gomez?

8          DEFENDANT GOMEZ:  No, sir.

9          THE COURT:  Mr. Copeland?

10         DEFENDANT COPELAND:  No, sir.

11         THE COURT:  Mr. Dupree?

12         DEFENDANT DUPREE:  No, sir.

13         THE COURT:  Mr. Martinez?

14         DEFENDANT MARTINEZ:  No, sir.

15         THE COURT:  Then the Court finds as to each of you that

16  your plea is freely and voluntarily made, that you fully

17  understand the charge or charges and the penalties, that you

18  understand your constitutional and statutory rights and desire

19  to waive them, that you are competent to stand trial, and that

20  there is a factual basis for each plea.

21         Based on these findings, I accept your guilty pleas and

22  find you guilty.  These cases will now be referred to the

23  probation office for the preparation of presentence reports.

24  Copies of those reports will be available to each of you and to

25  your attorneys and to the government for review prior to

1    sentencing.  If you have objections to the presentence report,

2    they should be filed with the probation office not more than

3    ten days after you receive your copy.

4         Sentencing in these cases will be set for Wednesday, March

5    the 5th at 1:00 p.m.

6         Does the government have any objection to Mr. Owens and

7    Ms. Gomez remaining free on current conditions of release?

8         MS. BURRIS:  No, Your Honor.

9         THE COURT:  It will be so ordered.

10        Anything further in any of these cases, Counsel?

11        Then you may be excused.

12        (Hearing adjourned at 2:03.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT  )

2   WESTERN DISTRICT OF TEXAS     )

3

4       I, Kristie M. Davis, Official Court Reporter for the

5   United States District Court, Western District of Texas, do

6   certify that the foregoing is a correct transcript from the

7   record of proceedings in the above-entitled matter.

8       I certify that the transcript fees and format comply with

9   those prescribed by the Court and Judicial Conference of the

10  United States.

11      Certified to by me this 25th day of August 2008.

12

                            /s/ Kristie M. Davis
13                          KRISTIE M. DAVIS
                            Official Court Reporter
14                          P.O. Box 20994
                            Waco, Texas  76702-0994
15                          Telephone No.:  (254) 754-7444
                            kmdaviscsr@sbcglobal.net
16

17

18

19

20

21

22

23

24

25